IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX CICCOTELLI, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : COMPLAINT FOR VIOLATION OF THE |
| FLEXION THERAPEUTICS, INC., | : SECURITIES EXCHANGE ACT OF 1934 |
| PATRICK J. MAHAFFY, MICHAEL D. | : |
| CLAYMAN, SCOTT A. CANUTE, | : |
| SAMUEL D. COLELLA, UTPAL | : |
| KOPPIKAR, ELIZABETH KWO, HEATH | : |
| LUKATCH, ANN MERRIFIELD, ALAN W. | : |
| MILINAZZO, and MARK STEJBACH, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

**NATURE OF ACTION**

1. On October 11, 2021, Flexion Therapeutics, Inc. ("Flexion" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Pacira Biosciences Inc. ("Parent") and Oyster Acquisition Company Inc. ("Purchaser") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Purchaser commenced a tender offer (the "Tender Offer") to purchase Flexion's outstanding common stock for $8.50 in cash per share. The Tender Offer is set to expire on November 18, 2021.

3. On October 22, 2021, defendants filed a recommendation statement (the "Recommendation Statement") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Recommendation Statement fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Flexion common stock.

9. Defendant Flexion is a Delaware corporation. Flexion's common stock is traded on the NASDAQ under the ticker symbol "FLXN."

10. Defendant Patrick J. Mahaffy is Chairman of the Board of Directors of Flexion (the "Board").

11. Defendant Michael D. Clayman is Chief Executive Officer, Co-Founder, and a member of the Board.

12. Defendant Scott A. Canute is a member of the Board.

13. Defendant Samuel D. Colella is a member of the Board.

14. Defendant Utpal Koppikar is a member of the Board.

15. Defendant Elizabeth Kwo is a member of the Board.

16. Defendant Heath Lukatch is a member of the Board.

17. Defendant Ann Merrifield is a member of the Board.

18. Defendant Alan W. Milinazzo is a member of the Board.

19. Defendant Mark Stejbach is a member of the Board.

20. Defendants identified in ¶¶ 10-19 are referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

21. Flexion is a biopharmaceutical company focused on the development and commercialization of novel, local therapies for the treatment of patients with musculoskeletal conditions.

22. On October 11, 2021, Flexion entered into the Merger Agreement.

23. The press release announcing the Proposed Merger provides as follows:

Pacira BioSciences, Inc. (Nasdaq: PCRX), the industry leader in its commitment to non-opioid pain management and regenerative health solutions, and Flexion Therapeutics, Inc. (Nasdaq: FLXN) today announced a definitive agreement pursuant to which Pacira will acquire Flexion for $8.50 per share in cash, plus one non-tradeable contingent value right (CVR) worth up to $8.00 per share in cash. The CVR is payable (subject to certain terms and conditions) in the event certain sales and/or regulatory milestones are achieved, as set forth in more detail below. The transaction was unanimously approved by the board of directors of each of Pacira and Flexion.

Flexion is a commercial-stage biopharmaceutical company focused on the development and commercialization of novel, local non-opioid therapies for the treatment of patients with musculoskeletal conditions, including osteoarthritis (OA), postsurgical pain and low back pain. Approved in 2017, Flexion's lead product, ZILRETTA® (triamcinolone acetonide extended-release injectable

suspension) is the first and only FDA-approved treatment for OA knee pain utilizing extended-release microsphere technology.

"This acquisition is a major milestone in our strategy to build a robust offering of novel, non-opioid treatments to improve patient care along the neural pain pathway while simultaneously providing us with a complementary commercial asset in ZILRETTA for the treatment of OA knee pain," said Dave Stack, chairman and chief executive officer of Pacira. "We believe the Flexion portfolio further solidifies Pacira as a leader in opioid-sparing pain management as we continue to redefine the role of opioids as a last resort rescue medication. Importantly, this acquisition creates diversification and growth to our topline while providing what we would expect to be meaningful synergies that should result in substantial near- and long-term accretion to our cash flows and earnings."

"Pacira shares our commitment to advancing non-opioid pain control and we believe it is ideally positioned to drive continued clinical and commercial success of ZILRETTA, FX201, and FX301," said Michael Clayman, M.D., chief executive officer and co-founder of Flexion. "This combination with Pacira offers Flexion stakeholders excellent prospects for value creation, particularly as the contingent value rights provide the opportunity to continue to benefit from the ongoing success of Flexion's products and programs."

"I'd like to thank all of our employees – past and present -- for their extraordinary commitment and superb contributions that have translated into ZILRETTA, a medicine that matters, getting to increasing numbers of patients in need and to a pipeline of potentially transformative medicines," continued Dr. Clayman.

**Pacira Transaction Rationale**

- Innovative non-opioid portfolio directly aligns with the Pacira mission to provide an opioid alternative to as many patients as possible and address medical needs along the neural pain pathway.

- Flexion's ZILRETTA is a non-opioid injection that will allow Pacira to offer a treatment to manage OA pain of the knee at an earlier stage of the patient's journey along the neural pain pathway

- Complementary sales call points and clinical-stage pipeline offer significant cost synergies across research and development and commercial activities.

- Adds multiple clinical milestones, including the initiation of a Phase 3 registration trial of ZILRETTA in shoulder osteoarthritis and the advancement of Phase 1 studies of FX201 for musculoskeletal pain, including OA, and FX301 as a lower extremity nerve block for postsurgical pain.

- Immediately revenue generating and expected to be accretive to full-year

2022 earnings and significantly accretive thereafter.

**Transaction Details**

Under the terms of the definitive agreement, Pacira will commence a tender offer to acquire all outstanding shares of Flexion for a purchase price of $8.50 per share in cash, plus one non-tradeable CVR. The CVR will entitle Flexion stockholders to up to an additional $8.00 per share in cash payable (subject to certain terms and conditions) upon achievement of the following milestones:

- $1.00 per share if total calendar year ZILRETTA net sales achieve $250 million;

- $2.00 per share if total calendar year ZILRETTA net sales achieve $375 million;

- $3.00 per share if total calendar year ZILRETTA net sales achieve $500 million;

- $1.00 per share upon U.S. FDA approval of FX201; and

- $1.00 per share upon U.S. FDA approval of FX301.

The milestones associated with each contingent cash payment must be achieved, if at all, on or before December 31, 2030. There can be no assurance any payments will be made with respect to the CVR. The transaction is not subject to any financing condition and Pacira will fund the transaction from its existing cash resources.

Flexion's board of directors unanimously recommends that Flexion's stockholders tender their shares in the tender offer. Additionally, Flexion's directors and executive officers, or their affiliates, have (subject to certain terms and conditions) agreed to tender their shares in the tender offer.

**Timing to Close**

The transaction is anticipated to close during the fourth quarter of 2021, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Flexion's common stock. Following the successful closing of the tender offer, Pacira will acquire any shares of Flexion that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

**Third Quarter Performance and Guidance Update**

Today Pacira and Flexion are providing the following preliminary unaudited results and updates for the third quarter of 2021. The financial information included in this press release is preliminary, unaudited, and subject to adjustment. It does not

present all information necessary for an understanding of either company's financial results for the third quarter or full year 2021.

- EXPAREL net product sales of $121.9 million for the third quarter and $39.7 million for the month of September 2021, compared with $113.7 million and $39.5 million in the prior year, respectively. The number of EXPAREL selling days for the month of September was 21 in both 2021 and 2020. The elective surgery market faced additional pandemic-related challenges in August and September due to regional surges in COVID-19 delta variant cases, staffing shortages, and surgical fatigue from care teams addressing significant procedure backlogs. These variables began to subside in the latter part of September and Pacira expects the fourth quarter to reflect improving market dynamics.

- iovera° net product sales of $4.2 million for the third quarter and $2.3 million for the month of September 2021, compared with $2.7 million and $1.1 million in the prior year, respectively.

- Flexion expects that ZILRETTA net sales were in the range of $21 million to $23 million for the third quarter of 2021. Third quarter 2021 sales were negatively impacted, particularly in the second half of the quarter, by the following primary factors: (a) temporary disruptions from rebate program modifications, (b) pandemic-related challenges, and (c) several unanticipated manufacturing batch failures that led to short-dated ZILRETTA inventory resulting in smaller order sizes by physician practices and product returns from specialty distributors.

- Consistent with Pacira practices, Flexion is withdrawing its ZILRETTA sales guidance for 2021.

**Advisors**

J.P. Morgan Securities LLC acted as financial advisor to Pacira and Perkins Coie LLP is serving as its legal advisor. Lazard acted as lead financial advisor and Goldman Sachs also acted as financial advisor to Flexion. Cooley LLP is serving as Flexion's legal advisor.

24. On October 22, 2021, defendants filed the Recommendation Statement, which fails to disclose material information regarding the Proposed Merger.

<u>Financial Projections</u>

25. The Recommendation Statement omits material information regarding Flexion's financial projections, specifically: the line items underlying the financial projections.

26. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

Financial Analyses

27. The Recommendation Statement fails to disclose material information regarding the financial analyses conducted by Lazard.

28. Regarding Lazard's Discounted Cash Flow Analysis, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates used by Lazard; and (ii) the unlevered free cash flows used by Lazard in the analysis and the line items used to calculate unlevered free cash flows.

29. Regarding Lazard's Selected Precedent Transactions Analysis, the Recommendation Statement fails to disclose: (i) the individual multiples for the transactions observed by Lazard; (ii) the closing dates of the transactions observed by Lazard; and (iii) the total values of the transactions observed by Lazard.

30. Regarding Lazard's Selected Public Companies Analysis, the Recommendation Statement fails to disclose the individual multiples for the transactions observed by Lazard.

31. Regarding Lazard's Premia Paid Analysis, the Recommendation Statement fails to disclose: (i) the transactions observed by Lazard; and (ii) the premiums paid in the transactions observed by Lazard.

32. Regarding Lazard's Research Analyst Price Targets analysis, the Recommendation Statement fails to disclose: (i) the price targets observed by Lazard; and (ii) the sources of the price targets.

33. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

## COUNT I

**Claim Against Defendants for Violation of Section 14(e) of the Exchange Act**

34. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

35. Section 14(e) of the Exchange Act states:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

36. Defendants disseminated the misleading Recommendation Statement, which contained statements that, in violation of Section 14(e) of the Exchange Act, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not misleading.

37. The Recommendation Statement was prepared, reviewed, and/or disseminated by defendants.

38. The Recommendation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

39. By virtue of their positions within the Company and/or roles in the process and the preparation of the Recommendation Statement, defendants were aware of this information and their duty to disclose this information in the Recommendation Statement.

40. The omissions in the Recommendation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares.

41. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

42. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Recommendation Statement, causing statements therein to be materially incomplete and misleading.

43. Accordingly, defendants violated Section 14(e) of the Exchange Act.

44. Plaintiff is threatened with irreparable harm and has no adequate remedy at law.

## COUNT II

**Claim Against Defendants for Violation of 14(d) of the Exchange Act**

45. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

46. Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

47. Rule 14d-9(d) states:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

48. Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

49. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Recommendation Statement false

and/or misleading.

50. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

51. The omissions in the Recommendation Statement are material to plaintiff, and he will be deprived of his entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

52. Plaintiff has no adequate remedy at law.

## COUNT III

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

53. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Flexion within the meaning of Section 20(a) of the Exchange Act as alleged herein.

55. Due to their positions as directors of Flexion and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, thus, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

58. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

59. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

60. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

61. Due to their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

62. Plaintiff is threatened with irreparable harm and has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief against defendants as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the Exchange Act and Rule 14a-9;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 4, 2021

**GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*